**FILED**
**Aug 30, 2022**
**03:21 PM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



### TENNESSEE BUREAU OF WORKERS' COMPENSATION
### IN THE COURT OF WORKERS' COMPENSATION CLAIMS
### AT JACKSON

| | | |
|---|---|---|
| **ARLENE ERNSTES,** | ) | **Docket No. 2020-07-0617** |
| **Employee,** | ) | |
| **v.** | ) | |
| **PRINTPACK, INC.,** | ) | **State File No. 66407-2020** |
| **Employer,** | ) | |
| **and** | ) | |
| **STARR INDEMNITY & LIABILITY CO.,** | ) | **Judge Amber E. Luttrell** |
| **Carrier.** | ) | |

---

## COMPENSATION ORDER

---

The Court held a Compensation Hearing on August 4, 2022, on Ms. Ernstes's request for worker's compensation benefits for a hearing loss injury. The issue is whether Printpack's notice and limitations defense bars her claim for benefits. For the reasons below, the Court rejects the defense and holds that Ms. Ernstes proved by a preponderance of the evidence that she sustained a compensable hearing loss injury. As a result, she is entitled to ten-percent permanent partial disability benefits and future medical benefits.

### History of Claim

Ms. Ernstes is eighty-three years old and worked for Printpack for thirty-three years, retiring in March of 2016. She alleged that exposure to loud machinery during her employment caused her hearing loss.[1]

Ms. Ernstes first started working for Printpack at its Indiana facility for seventeen years and then moved to the Tennessee plant. She stated she did everything in the plant during her years at Printpack, which included working as a shop-floor helper, trainer, and truck loader. She also worked on computers, in the lab, and in maintenance. She spent most of her years "on the floor," where it was a loud environment. She wore hearing protection

---

[1] Before working at Printpack, Ms. Ernstes worked for a sewing factory and at a grocery store deli, but she was not exposed to loud noises at either job.

her entire employment but stated she could still hear loud noises and people talking.

Ms. Ernstes first noticed gradual hearing problems when she had to turn up her television volume, and her granddaughters suggested she might need hearing aids. She estimated she first noticed these problems three to four years before her 2021 deposition. She believed her hearing loss was age-related. She obtained hearing aids but did not recall the date.

Printpack performed yearly hearing screens. However, Ms. Ernstes testified that Printpack never discussed any results with her or recommended she see a physician. She also never received a copy of the hearing screen results. Instead, she stated she received notes in her mailbox at work that said whether she passed her screen. Neither Ms. Ernstes nor Printpack offered any evidence that Ms. Ernstes ever failed a screen. Ms. Ernstes testified that she did not take the results seriously because she once fell asleep during a screen performed after her shift, and she still passed.

For its part, Printpack relied on Ms. Ernstes's employment hearing screens from March 13, 1998, through September 11, 2013. (Exhibit 3 to Dr. Studtmann's deposition.) The screens had an employee signature line at the bottom to certify the employee received a copy of the report, but none was signed by Ms. Ernstes. Later in her employment, several screens noted a change from baseline called a "standard threshold shift" and included a statement that read, "there can be many reasons for a change in hearing, including medication, test problems, exposure to noise while not wearing hearing protection, or ear problems such as wax or infection." Most screens did not include this statement.

Printpack also introduced a medical record from December 23, 2019, when Ms. Ernstes saw otolaryngologist Dr. Karl Studtmann and his physician's assistant at West TN ENT Clinic. The record noted that Ms. Ernstes reported decreased hearing in both ears for many years that had progressively worsened and a sinus infection a few weeks before, which resulted in fluid in her ears and dizziness. The PA diagnosed bilateral sensorineural hearing loss, referred her for a hearing aid consultation, and instructed her to return to the clinic if her dizziness returned. Ms. Ernstes testified she went to the ENT Clinic that day due to her dizziness and ear pain and believed her hearing loss was age-related. The record does not mention either Ms. Ernstes or the provider relating her hearing loss to her work.

Ms. Ernstes testified she first believed she might have work-related hearing loss when she met with her attorney, who promptly sent letters to Printpack and its carrier on September 28, 2020, providing notice of her alleged gradually-occurring injury. (Exhibit 2.)[2] She filed a Petition for Benefit Determination on November 17, 2020.

---

[2] Ms. Ernstes, through counsel, asserted the meeting occurred in September 2020, shortly before counsel provided notice to Printpack.

In June 2021, Ms. Ernstes obtained an evaluation from Dr. Studtmann. She introduced his deposition at the hearing. Dr. Studtmann tested Ms. Ernstes and found she had a "down-sloping high frequency sensorineural or nerve type hearing loss."

Dr. Studtmann also reviewed Ms. Ernstes's employment hearing screens between 1998 and 2013. He testified the 1998 screen showed three abnormal frequencies in the left ear and normal hearing in the right ear. Between 1998 and 2013, Dr. Studtmann stated the screens showed a gradual decrease, more in her left ear than her right ear, which he described as "significant."

Dr. Studtmann concluded that Ms. Ernstes's testing was consistent with a noise-induced hearing loss. He causally related it to her noise exposure at Printpack based on the progression of noise-induced hearing loss during the period he reviewed and assigned a ten-percent impairment.

On cross-examination, Dr. Studtmann testified regarding Ms. Ernstes's 2019 visit to his clinic. He testified she presented complaining of dizziness and hearing loss, but her biggest complaint was dizziness. He stated her dizziness had improved and the type she described was consistent with a blood-pressure problem. He performed an audiogram at that visit and found down-sloping high frequency sensorineural hearing loss and mild low frequency hearing loss. He compared the 2019 and 2021 results and noted, "the pattern's very similar." Dr. Studtmann discussed her hearing loss with her in 2019 and his referral for hearing aids but testified they did not discuss the cause at that point. Dr. Studtmann denied that Ms. Ernstes should have known in 2019 that her hearing loss was work-related based on its severity. He stated that "some people have natural hearing loss that significant."

### Findings of Fact and Conclusions of Law

Ms. Ernstes must prove all elements of her claim by a preponderance of the evidence. Tenn. Code Ann. § 50-6-239(c)(6) (2021).

*Notice and Statute of Limitations*

Printpack contended Ms. Ernstes is not entitled to workers' compensation benefits because her claim is time-barred. Tennessee Code Annotated section 50-6-203(b)(1) provides the limitations on claims and states the following:

> In instances when the employer has not paid workers' compensation benefits to or on behalf of the employee, the right to compensation . . .shall be forever barred, unless the notice required by § 50-6-201 is given to the employer *and* a petition for benefit determination is filed with the bureau . . within one (1) year after the *accident resulting in injury*.

3

(Emphasis added.)

The Court first considers whether Ms. Ernstes gave notice to Printpack as required by Tennessee Code Annotated section 50-6-201(b)(1). Because Ms. Ernstes alleges a cumulative-trauma condition, she must satisfy the following notice requirement:

> In those cases where the injuries occur as the result of gradual or cumulative events or trauma, then the injured employee or the injured employee's representative shall provide notice of the injury to the employer within thirty-days (30) after the employee:

> (1) Knows or reasonably should know that the employee has suffered a work-related injury that has resulted in permanent physical impairment;[3]

Here, the question is whether Ms. Ernstes notified Printpack of her injury within thirty days of when she knew or reasonably should have known that she suffered a *work-related* injury *that resulted in permanent physical impairment*. The Court finds she did.

Printpack argued Ms. Ernstes knew or should have known she had a work-related hearing loss years before her notice date or, at the latest, when she was diagnosed with hearing loss in 2019. It argued that given the noisy environment Ms. Ernstes worked in at Printpack, a "reasonable person exercising due diligence in Employee's shoes would have discovered that her perceived hearing loss was work-related."

Printpack's argument conflates Ms. Ernstes's knowledge that she had hearing loss with knowledge that it was work-related. Ms. Ernstes admitted she noticed difficulty hearing and raised her television volume three to four years before giving her deposition. She was in her late seventies at that time, and she attributed her hearing loss to her age. She did not causally relate it to work until she met with her attorney, and they notified Printpack in September 2020. Dr. Studtmann later confirmed it in June 2021, when he told her she had work-related hearing loss and assigned permanent impairment.

Ms. Ernstes was credible. By direct observation, the Court finds Ms. Ernstes was honest and forthcoming when describing her hearing loss and its cause. *See Kelly v. Kelly*, 445 S.W.3d 685, 694-695 (Tenn. 2014) (discussing indicia of witness credibility). The Court finds any inconsistencies in her testimony are attributable to a poor memory given the length of time that has passed rather than a lack of credibility.

The Court further finds that Ms. Ernstes's medical records and hearing screens support her testimony. Nowhere in the 2019 medical record did Ms. Ernstes or her

---

[3] The thirty-day notice period effective prior to July 1, 2016, is applicable to injuries between July 1, 2014 and June 30, 2016. Ms. Ernstes's date of injury was March 19, 2016, her last day worked; therefore, the thirty- date notice period applies.

4

providers causally relate her hearing loss to her work, and Dr. Studtmann confirmed they did not discuss the cause of her hearing loss at that time.

As for the hearing screens, Ms. Ernstes's uncontroverted testimony was that she never received them, and Printpack never explained the results to her. She only received notes stating whether she passed in her mailbox, and Printpack offered no testimony that she ever failed a screen. Her testimony is bolstered by the fact that none of the screens introduced into evidence was signed by Ms. Ernstes to certify her receipt. Further, Printpack failed to explain how these screens were its notice to her that she had suffered a work-related hearing loss.

Printpack also cited *Jenkins v. Goodyear Tire & Rubber Co.*, No. W2014-02303-SC-R3-WC, 2016 Tenn. LEXIS 175 (Tenn. Workers' Comp. Panel Mar. 15, 2016), in support of its position. In *Jenkins*, the employee died before filing suit, and his estate filed the action. The Panel held that because the employee could not testify, the only proof of what he knew was in his medical records. That evidence showed that the employee had a hearing loss before he was hired, that subsequent tests showed his condition worsened, and he signed a yearly report certifying that the results were discussed with him. He waited two years after his employment ended to bring a claim. The panel held:

> We think a reasonably prudent person, knowing that he had significant hearing loss, which got worse through twenty-one years of employment, would not wait until two years after his last day of work to take any action, and would have sought medical advice before the various periods of limitation ran.

*Jenkins*, at *10.

The Court finds *Jenkins* is distinguishable. Here, Ms. Ernstes was able to testify as to when she first knew her hearing loss was work-related, and she provided notice and filed her claim shortly afterward. Also, unlike *Jenkins*, Printpack did not offer any proof that Ms. Ernstes received her yearly screens or an explanation for her hearing loss that might have triggered the statute of limitations.

For these reasons, the Court holds that Ms. Ernstes gave timely notice of her hearing loss injury. The Court now turns to whether she filed her petition for benefit determination within one year after the "accident resulting in injury" as section 50-6-203(b)(1) requires.

The Appeals Board has noted that identifying the "accident resulting in injury" can be problematic in gradually occurring or cumulative trauma cases. *Maples v. Fed.-Mogul Corp.*, 2016 TN Wrk. Comp. App. Bd. LEXIS 8, at *25-26 (Feb. 17, 2016) (internal citations omitted). The Board concluded that the "last day worked" rule remains viable for determining the date of injury in gradual injury and cumulative trauma cases. *Id.* at *27.

In this case, Ms. Ernstes testified that her last day worked was March 19, 2016, which was also the last day she was exposed to the work activity that caused the injury. Ms. Ernstes filed her Petition for Benefit Determination on November 17, 2020, and argued that although she did not file her Petition within one year of her last day worked, it was nevertheless timely under the application of the "discovery rule." The Court agrees.

The Appeals Board has explained the discovery rule stating, "The discovery rule provides that the statute of limitations 'is suspended until by reasonable care and diligence it is discoverable and apparent that a compensable injury has been sustained.'" *Linsey v. Acadia Healthcare Co., d/b/a Delta Medical Center-Memphis*, 2019 TN Wrk. Comp. App. Bd. LEXIS 17, at *13 (May 13, 2019). (internal citations omitted).

Again, Ms. Ernstes did not suspect her hearing loss was work-related until meeting with her attorney and providing notice in September 2020; she believed her declining hearing was age-related. Printpack offered no evidence she was told or provided anything at work to suggest otherwise. She did not *know* it was work-related until she saw Dr. Studtmann in 2021. Although she saw Dr. Studtmann in 2019, the Court credits her testimony, supported by Dr. Studtmann's testimony, that she primarily saw him that day for dizziness and ear pain. While he diagnosed hearing loss, they did not discuss the cause of the hearing loss until her 2021 visit. Under these facts, the Court holds Ms. Ernstes's Petition, filed within two months of her meeting with her attorney, is timely and not barred by the statute of limitations.

*Permanent Disability and Future Medical Expenses*

Dr. Studtmann causally related Ms. Ernstes's hearing loss to her noise exposure at Printpack; Printpack offered no conflicting medical opinion or causation argument. Thus, the Court holds Ms. Ernstes proved her hearing loss arose primarily out of and in the course and scope of her employment at Printpack.

Based on Dr. Studtmann's ten-percent rating, Ms. Ernstes is entitled to an original award of forty-five weeks at the stipulated compensation rate of $451.79, or $20,330.55. The parties agreed that she is not entitled to increased benefits under Tennessee Code Annotated section 50-6-207(3)(B) because of her voluntary retirement. The total award of permanent partial disability is accrued and payable in a lump sum based on the maximum medical improvement date of June 17, 2021, when Dr. Studtmann evaluated and rated her.

Ms. Ernstes is further entitled to lifetime future medical benefits made reasonably necessary by her injury. Tenn. Code Ann. § 50-6-204. Printpack shall offer a panel of physicians from which Ms. Ernstes may select an authorized physician.

**IT IS, THEREFORE, ORDERED** as follows:

6

1. Printpack shall pay Ms. Ernests $20,330.55 in permanent partial disability benefits.

2. Ms. Ernstes's attorney is entitled to a twenty-percent fee of the award under Tennessee Code Annotated section 50-6-226(a)(1). Mr. Boyd may move the Court for an award of discretionary costs unless the parties reach an agreement on the issue.

3. Printpack shall pay future medical benefits under Tennessee Code Annotated section 50-6-204(a)(1)(A) and will designate a panel of physicians from which Ms. Ernstes may choose an authorized physician.

4. The Court taxes the $150.00 filing fee to Printpack, to be paid to the Court Clerk under Tennessee Compilation Rules and Regulations 0800-02-21-.06 (February, 2022) within five business days of this order becoming final, and for which execution might issue if necessary.

5. Printpack shall prepare and submit to the Court Clerk a Statistical Data Form (SD2) within ten business days of this order becoming final.

6. Unless appealed, this order shall become final thirty days after issuance.

**ENTERED August 30, 2022.**

*Amber E. Luttrell*

**JUDGE AMBER E. LUTTRELL**
**Court of Workers' Compensation Claims**

APPENDIX

Exhibits:
1. Dr. Studtmann's deposition
2. Ms. Ernstes's counsel's letter to Printpack providing notice
3. Danielle Gallimore, PA-C medical record- December 2019
4. Excerpt from Ms. Ernstes's deposition

Technical record:
1. Petition for Benefit Determination- November 17, 2020
2. Dispute Certification Notice
3. Request for Scheduling Hearing
4. Scheduling Order
5. Joint Motion for Continuance
6. Order Granting Joint Motion for Continuance
7. Employer's Motion for Continuance
8. Order Granting Employer's Motion

9. Post-Discovery Dispute Certification Notice
10. Amended Scheduling Order
11. Employee's Pre-Trial Brief
12. Employer's Pre-Trial Brief
13. Employee's Witness and Exhibit List
14. Employee's Pre-Compensation Hearing Statement
15. Employer's Pre-Compensation Hearing Statement

## CERTIFICATE OF SERVICE

I certify that a copy of this Order was sent as indicated on August 30, 2022.

| Name | Email | Service sent to: |
|---|---|---|
| Jeffrey Boyd, Employee's Attorney | X | jboyd@borenandboyd.com<br>scallison@borenandboyd.com |
| Adam Brock-Dagnan,<br>Employer's Attorney | X | acbrock-dagnan@mijs.com<br>ldpipkin@mijs.com<br>ssshell@mijs.com |

*Penny Shrum*

**Penny Shrum, Court Clerk**
wc.courtclerk@tn.gov

8



<u>Compensation Order Right to Appeal:</u>

If you disagree with this Compensation Order, you may appeal to the Workers' Compensation Appeals Board. To do so, you must:

1. Complete the enclosed form entitled "Notice of Appeal" and file it with the Clerk of the Court of Workers' Compensation Claims *within thirty calendar days* of the date the Compensation Order was filed. When filing the Notice of Appeal, you must serve a copy upon the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You are responsible for ensuring a complete record is presented on appeal. The Court Clerk will prepare the technical record and exhibits for submission to the Appeals Board, and you will receive notice once it has been submitted. If no court reporter was present at the hearing, you may request from the Court Clerk the audio recording of the hearing for a $25.00 fee. A licensed court reporter must prepare a transcript, and you must file it with the Court Clerk *within fifteen calendar days* of filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within fifteen calendar days* of filing the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the testimony presented at the hearing. The Workers' Compensation Judge must approve the statement of the evidence before the record is submitted to the Appeals Board. If the Appeals Board must review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. After the Workers' Compensation Judge approves the record and the Court Clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties. You have *fifteen calendar days* after the date of that notice to file a brief to the Appeals Board. *See the Rules governing the Workers' Compensation Appeals Board on the Bureau's website*

**If neither party timely files an appeal with the Appeals Board, the trial court's Order will become final by operation of law thirty calendar days after entry. Tenn. Code Ann. § 50-6-239(c)(7).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



# NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

Docket No.: _____

State File No.: _____

Date of Injury: _____

_____
**Employee**

v.

_____
**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____     ☐ Motion Order filed on _____

☐ Compensation Order filed on_____     ☐ Other Order filed on_____

issued by Judge _____.

## Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____
_____
_____
_____

## Parties

**Appellant(s)** (Requesting Party): _____ ☐Employer☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐ Employer ☐ Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*Attach an additional sheet for each additional Appellee *

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____

*[Signature of appellant or attorney for appellant]*